IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                            CRIMINAL ACTION NO. 2:19-cr-00289

TREYVON WILSON,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's *Motion to Suppress* (Document 24), the *Response of the United States in Opposition to Defendant's Motion to Suppress* (Document 28), and the Defendant's *Reply in Support of Motion to Suppress* (Document 32). In addition, the Court has considered the evidence and testimony presented during the suppression hearing held on April 22, 2021. For the reasons stated herein, the Court finds that the motion should be granted.

The single-count Indictment returned on November 26, 2019, charges the Defendant, Treyvon Wilson, with possession with intent to distribute a quantity of oxymorphone, in violation of 21 U.S.C. § 841(a)(1). The indictment alleges that the conduct occurred on or about March 14, 2018, at or near Charleston, Kanawha County, West Virginia.

Detectives with the Metropolitan Drug Enforcement Network Team (MDENT) were conducting drug interdiction at the Greyhound bus station at 300 Reynolds Street in Charleston, West Virginia, an area where law enforcement had a history of making arrests for warrant service

1

and other criminal activity. Sergeant Johnson testified that drug traffickers commonly travel on buses from source cities, including Detroit, MI, and Columbus, OH, using tickets with assumed names and other destinations to conceal their movements. The detectives conduct surveillance at the bus station when buses are scheduled to arrive from those source cities. Sgt. Johnson observed Mr. Wilson stand in the back of a southbound bus as it arrived in the station and exit quickly, which he considered suspicious. He alerted his partner, who observed Mr. Wilson exit the bus station and enter a pickup truck, placing a bag in the backseat and sitting in the front passenger seat. Sgt. Johnson testified that he called in the Tennessee license plate and found that the registration was expired. He and his partner conducted a traffic stop. They were using a vehicle not equipped with a dash cam, and no body camera footage is available.

The CAD report of the traffic stop indicates that the stop began at 10:35 p.m. The NCIC search for the plates is listed as occurring after the stop was initiated. Sgt. Johnson explained that the dispatcher does not create a call until after the stop occurs, and so there would be no record of the exact time he requested information on the plates and learned of the expired registration. The dispatcher adds that information when time permits during the call, and the system automatically records the time that the information is entered, not necessarily the precise time that the information was obtained or shared. The Court found Sgt. Johnson's testimony quite credible, including his explanation regarding the times on the report.

Sgt. Johnson made contact with the driver of the vehicle, Christopher Young, as well as Mr. Wilson. Mr. Wilson provided his name and date of birth but stated he did not have ID with him. Mr. Young stated that he had a concealed carry permit and a handgun in the vehicle. Sgt. Johnson asked him to exit the vehicle and accompany him to his cruiser so that he could secure

the gun and run it through NCIC. He asked Mr. Young about his passenger, and Mr. Young was unable to identify him. Mr. Young stated that he had come from Williamson, West Virginia, to pick up Mr. Wilson at the request of a friend. Sgt. Johnson wrote a warning ticket for the expired registration and completed his computer checks.

Sgt. Johnson returned to the vehicle to speak with Mr. Wilson. He testified that, when asked what state he had come from, Mr. Wilson stuttered a bit, said "Toledo" then stuttered a bit and said "Michigan," before saying "Toledo, Ohio." Sgt. Johnson returned to speak with Mr. Young and request consent for a search, which Mr. Young denied. Corporal Lindell had arrived with his K-9, Ikar, soon after the traffic stop began, and Sgt. Johnson asked Mr. Wilson to exit the vehicle so that a dog sniff search could take place. Mr. Wilson permitted Sgt. Johnson to search his person. He had a bus ticket in his pocket in another name. He explained that someone else had purchased the ticket for him. Sgt. Johnson indicated that tickets purchased in other names, or tickets that conceal the true original or destination city, are indicators of potential drug trafficking activity.

Meanwhile, Cpl. Lindell observed a positive alert from Ikar at the front passenger side of the vehicle at approximately 10:46 p.m., about 11 minutes after the commencement of the stop. He testified that a positive alert could be any obvious change in behavior, such as tail wagging, sitting, intense sniffing, or excitedness. His recollection is that Ikar alerted by sitting down outside the front passenger side of the vehicle. He then let Ikar into the vehicle, and he alerted in the back passenger area by sniffing at the bags and may have also sat down. When a dog alerts, it receives verbal praise and/or a toy. Ikar was certified in detecting certain controlled substances, including heroin.

Based on Ikar's alert, the officers searched the bag. They opened lotion bottles that were bulging and found plastic bags containing prescription opiates.

The Defendant, Wilson, argues that the stop and subsequent search should be suppressed as Fourth Amendment violations. He contends that the stop was unsupported at its inception because, in his view, the CAD report indicates that the officers did not learn that the registration was expired until after stopping the vehicle. He further contends that the scope and duration of the stop were impermissibly extended beyond the purpose of issuing a warning citation for expired registration. In addition, he argues that the United States has not adequately demonstrated that Ikar's training, certification, and reliability were adequate to support a search. He argues that the methods of alerting are overly subjective, that Ikar is not trained or certified in identifying prescription opiates, and that any dog sniff designed to detect prescription opiates would be improper because such substances are typically possessed as legal medical prescriptions.

The United States argues that the officers appropriately stopped the vehicle after running the plates and discovering that the registration was expired. It asserts that the scope of a traffic stop may appropriately include checking identification of the driver and any passengers, checking for outstanding warrants, and confirming the driver's license, registration, and insurance. It further argues that Mr. Wilson, as a passenger, lacked standing to contest the search of the contents of the vehicle.[1] Assuming standing, it contends that the officers had probable cause to search the vehicle based on Ikar's alert, in combination with the surrounding facts, including travel from a source city, Mr. Young indicating that he did not know Mr. Wilson, and Mr. Wilson's bus ticket in another name and hesitancy to state the city from where he was travelling.

---

1 During the hearing, the Court ruled that Mr. Wilson had standing to contest the search of his bag, given that the officers testified that they observed him exit the bus with the bag and place it in the vehicle.

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008). Extending a stop beyond the scope necessary to accomplish the purposes consistent with resolving the traffic violation requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *Id.* at 336.

"[T]he use of a well-trained narcotics-detection dog…during a lawful traffic stop, generally does not implicate legitimate privacy interests" and need not be supported by probable cause beyond that necessary to justify the stop itself. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). However, prolonging a traffic stop, even for only a few minutes, to conduct a dog sniff absent reasonable suspicion constitutes an unlawful seizure. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). Whether a drug dog's positive alert provides probable cause to conduct a search is evaluated under a totality of the circumstances standard based on evidence regarding the dog's reliability. *Fla. v. Harris*, 568 U.S. 237, 246–47 (2013). "[Evidence of a dog's satisfactory

5

performance in a certification or training program can itself provide sufficient reason to trust his alert," subject to cross-examination or additional evidence challenging the certification or training program, the dog's or handler's history or past performance, or the conduct of the dog sniff at issue. *Id.* "The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 248. "[T]he credibility of a dog's alert rests 'almost entirely on the credibility of the dog handler's testimony [b]ecause the handler is the only witness who can speak to the subjective interaction during a particular dog alert.'" *United States v. Christian*, 452 F. App'x 283, 286 (4th Cir. 2011) (unpublished) (quoting *United States v. Howard,* 621 F.3d 433, 449 (6th Cir.2010), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 1623, 179 L.Ed.2d 514 (2011)).

  The Court found credible Sgt. Johnson's testimony that the officers learned that the vehicle had expired registration prior to conducting the traffic stop. A minor traffic violation provides probable cause to stop a vehicle, regardless of the officers' subjective motivation or interest in investigating other matters. Having legitimately stopped the vehicle, the officers appropriately performed tasks related to the purposes of the stop and officer safety: they asked both the driver and passenger for their names and identification, they secured a firearm and ran an NCIC check on it, they checked the driver's license and registration, and they wrote a warning citation for the expired registration. While performing those tasks, Sgt. Johnson made routine inquiries regarding the nature of the travel and the identity of the passenger.

  After completing all tasks necessary to effectuate the purpose of the traffic stop—citing Mr. Young for his expired registration—the officers had no further justification for continuing the

seizure of Mr. Young and Mr. Wilson. At the point that Sgt Johnson had completed the purpose of the stop and returned to the truck to further question Mr. Wilson, the seizure was impermissibly prolonged. At that juncture, further questioning was not necessary to either complete the purpose of the stop or to insure officer safety. Its purpose was to investigate an unrelated criminal matter.

Although Ikar was already present and the dog sniff extended the stop by only minutes, *Rodriguez* is clear that prolonging a traffic stop to investigate unrelated matters without reasonable suspicion is impermissible. Upon his return to the truck, Sgt Johnson's suspicion was based on Mr. Wilson's arrival on a bus that had previous stops in source cities, with a history of being used as transportation for drug traffickers, his behavior in quickly standing and exiting the bus, and Mr. Young's inability to identify the Defendant whom he had driven approximately an hour and a half to pick up. Those facts do not constitute reasonable suspicion and, therefore, are not sufficient to support a continued seizure. (See *United States v. Bowman,* 884 F.3d 200 (4th Cir. 2018), in which the Court found evidence of a dog sniff, conducted after officer's conversation with passenger, should have been suppressed where officer lacked reasonable suspicion to extend an otherwise completed traffic stop.)

The Court finds it unnecessary to reach the issue of whether Ikar's alert was sufficiently reliable to permit the search. The motion to suppress should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's *Motion to Suppress* (Document 24) be **GRANTED**.

7

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: May 5, 2021

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA